UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEBRA KOSS,

                              Plaintiff,

                                                        **Hon. Hugh B. Scott**

                    v.

                                                        12CV486A

                                                        **Report
                                                        &
STRIPPIT, INC.,                                         Recommendation**

                              Defendant.

_____

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 7).  The instant matter before the Court is defendant's motion for summary

judgment (Docket No. 30[1]).  Responses to this motion initially were due by October 7, 2013

(Docket No. 31), but plaintiff requested an extension of this schedule (Docket No. 32), which

was granted (Docket No. 33).  Responses then were due by November 6, 2013, with any replies

due by November 27, 2013, and the motion deemed submitted (without oral argument) on

November 27, 2013 (id.).

_____

        [1]In support of its motion, defendant submits the declarations (each with exhibits) of
John McKinney, Anthony Marzullo, and of its counsel, its Statement of Undisputed Facts, and
Memorandum of Law, Docket No. 30; the Reply Declarations of Marzullo, McKinney and its
counsel (with exhibits), and Reply Memorandum, Docket No. 37. In opposition, plaintiff submits
her Declaration, Docket No. 34, with exhibits, Docket No. 34; her attorney's Declaration, with
exhibits, Docket No. 35; her Memorandum of Law, Docket No. 36; and her Opposing Statement
of Facts, id.

**BACKGROUND**

*Complaint*

This is a Title VII[2] and New York State Human Rights Law[3] action in which plaintiff alleges discrimination based upon sex and disability in violation of those laws (see generally Docket No. 1, Compl.) and the Americans With Disabilities Act[4]. She claims that defendant subjected her to discrimination "by subjecting her to discriminatory terms and conditions of employment, including differential treatment and harassment based on her sex and disability" (id. ¶ 1), her disability being an anxiety disorder (id. ¶ 19). According to the Complaint, plaintiff worked for defendant first in 1981 and again in November 2006, most recently as a service communication coordinator (id. ¶ 8). Plaintiff alleges that defendant did not employ any female shop employees, managers, sales representatives or vice presidents (id. ¶ 9). Plaintiff was terminated on December 4, 2008 (id. ¶ 10; see Docket No. 30, Def. Statement ¶ 2).

While employed with defendant, plaintiff alleges that male employees performing comparable work to what she did were paid $18 per hour, while she received only $12.70 per hour (Docket No. 1, Compl. ¶ 13). Plaintiff wanted to study mechanical engineering and requested leave to attend courses at the State University of New York, Buffalo, but her request was denied. A month later, a male employee, made a similar request which defendant granted. (Id. ¶ 14.) Plaintiff claims that she was excluded from training offered to male employees and

---

[2]42 U.S.C. §§ 2000e, et seq.

[3]N.Y. Exec. Law § 396.

[4]42 U.S.C. §§ 12112, et seq. ("ADA").

2

her requests for such training were ignored (id. ¶¶ 15, 16).  She claims that she was terminated due to her gender (id. ¶ 17).

Plaintiff, citing her anxiety disorder, claims that defendant discriminated against her (id. ¶¶ 18-19).  She requested and received Family and Medical Leave Act[5] leave in August 2008 due to migraine headaches, panic attack, and blood pressure (id. ¶ 20).  Defendant's director of manufacturing Anthony Marzullo (Docket No. 30, Marzullo Decl. ¶ 1) accused plaintiff of having "baggage" due to her condition and that she was "not going anywhere," suggesting that she would not be promoted or advance within defendant (Docket No. 1, Compl. ¶ 21).  She claims that her termination in December 2008 was also due to her disability (id. ¶ 22).

She alleges violation of Title VII in her First Cause of Action for discrimination based upon sex (id. ¶¶ 24-26), violation of the ADA, for discrimination based upon disability in her Second Cause of Action (id. ¶¶ 28-30).  The Third Cause of Action alleges violation of the New York State Human Rights Law for discrimination against a female with a disability (id. ¶¶ 32-34).  Plaintiff seeks compensatory, consequential, and punitive damages and reinstatement at her former position (or its equivalent) and a cease and desist injunction (id. at 3-4, WHEREFORE cl.).

Defendant answered on July 25, 2012 (Docket No. 5).

*Defense Motion for Summary Judgment*

Defendant argues that plaintiff has not presented evidence of either sex or disability discrimination (Docket No. 30, Def. Memo. of Law at 3-9), or of harassment (id. at 9-18).  Defendant contends that plaintiff was not disabled under the ADA (id. at 18-20), see Giallanza v.

---

[5]29 U.S.C. §§ 2601 et seq.

<u>Time Warner Cable</u>, No. 07CV6050, 2009 U.S. Dist. LEXIS 27086, at *23 (W.D.N.Y. Mar. 30,

2009) (Telesca, J.) (denying <u>pro se</u> plaintiff claim that his general anxiety disorder substantially

limited his ability to perform the major life activity of working).  Alternatively, defendant

concludes that plaintiff has not been damaged since she failed to mitigate her damages following

her termination (<u>id.</u> at 20-21) and plaintiff stipulated that she would not seek emotional damages

(<u>id.</u> at 21; Docket No. 30, Def. Atty. Decl., Ex. NN).  Defendant concludes that plaintiff's claims

"reduce to little more than a vague litany of unremarkable incidents in ordinary office life" none

of which rise to the level of liability under Title VII and <u>McDonnell Douglas</u>[6] (Docket No. 30,

Def. Memo. at 21).

      According to defendant's Statement (save where disputed by plaintiff's Opposing

Statement), defendant is a machine tool manufacturer based in Akron, New York (Docket

No. 30, Def. Statement ¶ 1).  Plaintiff was last employed with defendant from November 20,

2006, to December 4, 2008 (<u>id.</u> ¶ 2).  In the 1980s and 1990s, plaintiff had worked for defendant

as a detailer, who assisted in drafting technical drawings (<u>id.</u> ¶ 4).

      Plaintiff contends that she had over two decades of experience in computer-aided design

(Docket No. 36, Pl. Statement ¶ 2; Docket No. 34, Pl. Decl. ¶¶ 25, 29), as well as performing

management-level work (Docket No. 36, Pl. Statement ¶ 2; Docket No. 34, Pl. Decl. ¶ 19).

      Both parties state that the machine tool manufacturing business was cyclical (Docket

No. 30, Def. Statement ¶ 4; Docket No. 36, Pl. Statement ¶ 4).  Defendant states that plaintiff

was laid off one or more times due to economic factors (Docket No. 30, Def. Statement ¶ 4).

---

[6]<u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802 (1973).

4

Plaintiff now contends that defendant's business is no longer cyclical "due to the service segment Defendant currently operates in" (Docket No. 36, Pl. Statement ¶ 4).

Plaintiff applied for and was hired in 2006 in a part-time position of service communications coordinator (Docket No. 30, Def. Statement ¶¶ 5, 7).  This position entailed assisting managers in defendant's service department with clerical tasks (such as reconciling field service reports, expense reports, and time cards) and serving as a back up switchboard operator (id. ¶ 6).  Plaintiff disputes whether the title of "service communications coordinator" had specific job duties (Docket No. 36, Pl. Statement ¶¶ 11, 17), contending that Marzullo conceded that in his examination, and that plaintiff spent two hours a day in drafting (id.; Docket No. 35, Pl. Atty. Decl. ¶ 29, Ex. 20, Marzullo EBT Tr. at 36; Docket No. 36, Pl. Statement ¶ 15).  When hired, plaintiff expressed her desire to Marzullo to return to drafting (Docket No. 30, Def. Statement ¶ 8; cf. Docket No. 36, Pl. Statement ¶ 8), although the parties differ as to when she last did drafting (with defendant noting her last work for them, Docket No. 30, Def. Statement ¶ 8), while plaintiff points to subsequent drafting work as late as a year before her rehiring by defendant (Docket No. 36, Pl. Statement ¶ 8).  Defendant counters that Marzullo told her that he would find drafting assignments for her to do (Docket No. 30, Def. Statement ¶ 11).  In January 2008, plaintiff's part-time position became full time (id. ¶ 16).

The parties dispute the number of instances plaintiff sought training (compare Docket No. 30, Def. Statement ¶ 18 with Docket No. 36, Pl. Statement ¶ 18).  Plaintiff asked in August 2008 for paid training in a class for solid modeling but plaintiff's supervisor, Marzullo, denied her request (Docket No. 30, Def. Statement ¶¶ 21-23), and the parties differ on Marzullo's reasons for the denial (compare id. ¶ 23 with Docket No. 36, Pl. Statement ¶¶ 23, 25), with

Marzullo stating that drafting was not part of plaintiff's job description and that the class she intended to take would consume too much time from her work (Docket No. 30, Def. Statement ¶ 23).  Marzullo explained to plaintiff in an email sent to her that there would be other opportunities for training (id. ¶ 24; Docket No. 30, Marzullo Decl. ¶ 8, Ex. A).  Plaintiff points to a male employee, Rob Sherbeck, who was allowed three and a half years of intermittent absences for him to attend similar training (Docket No. 36, Pl. Statement ¶¶ 23, 25).  Defendant counters that Sherbeck had different job qualifications than plaintiff (Docket No. 30, Def. Statement ¶ 26; cf. Docket No. 36, Pl. Statement ¶¶ 26-28).  Defendant also claims that its tuition reimbursement policy was not applicable here for plaintiff and would not support her tuition claim for that course (Docket No. 30, Def. Statement ¶ 25; but cf. Docket No. 36, Pl. Statement ¶¶ 23, 25 (disputing facts in defendant's Statement ¶ 25 but not presenting contrary detail)).

Plaintiff claimed that she overhead a manager, Don Grochocki, having conversations with servicemen making inappropriate sexual references but plaintiff was not the target of these comments (Docket No. 30, Def. Statement ¶ 29).  Defendant states that plaintiff did not complain about these references (id. ¶ 30), but plaintiff claims that she did complain to Grochocki and Marzullo (Docket No. 36, Pl. Statement ¶ 30; Docket No. 34, Pl. Decl. ¶ 125 (plaintiff stating that she did not complain to defendant's president but she did complain to Grochocki and Marzullo)).  Plaintiff alleges that Grochocki and Bernard Accou made other, isolated sexual statements (Docket No. 30, Def. Statement ¶¶ 31, 32).

Plaintiff also claimed that five employees harassed her (id. ¶ 34), with coworker Michele Wesolowski being overly critical (id. ¶¶ 35-37, 40).  Plaintiff concedes that Wesolowski never used profanity and never used words based upon her sex or disability (id. ¶¶ 40-41).  Defendant

claims that Wesolowski was not aware of plaintiff's disability (id. ¶ 39), but plaintiff disputes this, claiming that Wesolowski was fully aware of plaintiff's migraines (Docket No. 36, Pl. Statement ¶ 39).  Christine Matusek also allegedly harassed plaintiff by telling her not to take breaks, telling her to dress nicer, by hugging and hanging onto male coworkers and encouraging plaintiff to do the same, and interrupting plaintiff's drafting work by having plaintiff cover the telephones (Docket No. 30, Def. Statement ¶ 42).  Grochocki allegedly harassed plaintiff by failing to take her concerns about Wesolowski seriously, by saying something about "gals' work," and three instances in which his email had inappropriate content (id. ¶ 44).  Marzullo allegedly harassed plaintiff by stating that she had "baggage" and that she would not go anywhere (id. ¶ 45).  John McKinney allegedly harassed plaintiff by not taking her concerns seriously and by writing "FMLA" on her time cards (id. ¶ 49).  Defendant claims that plaintiff never reported any instance of harassment (id. ¶¶ 49, 52), but plaintiff claims that she told Marzullo, Grochocki and McKinney (Docket No. 36, Pl. Statement ¶¶ 49, 50, 52).

As for plaintiff's disabilities, plaintiff claims she is disabled due to migraines, panic attacks, anxiety, and post-traumatic stress disorder (id. ¶ 55; Docket No. 34, Pl. Decl. ¶¶ 60, 62-63).  The parties dispute the frequency of her ailments (compare Docket No. 36, Pl. Statement ¶ 56 with Docket No. 30, Def. Statement ¶ 56).  Plaintiff denies that defendant interfered or attempted to interfere with her taking Family and Medical Leave Act time (Docket No. 30, Def. Statement ¶ 57) and no complaints from defendant that plaintiff took off too much time (id. ¶ 58).

Plaintiff was terminated on December 4, 2008, as part of a reduction in force with five other male former employees (id. ¶ 59).  She disputes the reason for the reduction in force, with

defendant initially stating that the work of the laid off employees could be absorbed by managers but later claiming that "other employees" could do the work (Docket No. 36, Pl. Statement ¶¶ 59-60; cf. Docket No. 30, Def. Statement ¶ 60).  The employee that took over plaintiff's duties later went on leave and plaintiff was not called back as plaintiff claims was defendant's practice (Docket No. 36, Pl. Statement ¶¶ 59-60).

Plaintiff left two subsequent positions (Docket No. 30, Def. Statement ¶ 61), but plaintiff did so due to her disability (Docket No. 36, Pl. Statement ¶ 61).  Plaintiff waived with prejudice any claims for emotional distress or other psychological harm (Docket No. 30, Def. Statement ¶ 62; Docket No. 30, Def. Atty. Decl. ¶ 41, Ex. NN; Docket No. 21).

In this motion for summary judgment, defendant argues that, under McDonnell Douglas v. Green, 411 U.S. 792 (1973), there was no adverse employment action in plaintiff not receiving training (Docket No. 30, Def. Memo. at 3-4, 4-5).  Defendant denies that plaintiff showed an inference of discrimination based upon her treatment and that of former employee Sherbeck (id. at 5-6).  Defendant also points to a non-discriminatory reason for denying plaintiff training–that her job did not require the training and defendant could not lose her time while she attended classes (id. at 7-8).

As for her termination, defendant also argues there was no interference of discrimination and the declining economy provides a nondiscriminatory reason for the action.  Defendant next argues that plaintiff fails to sufficiently show harassment, either as isolated comments or not motivated by any protected characteristic (such as sex or disability) (id. at 9-18).  "[S]imple teasing, offhand comments, or isolated incidents of offensive conduct" are not sufficient to establish a hostile work environment, Smith v. Regional Plan Ass'n, No. 10 Civ. 5857, 2011

U.S. Dist. LEXIS 117712, at *6 (S.D.N.Y. Oct. 7, 2011); see McGrath v. Reuters, No. 10 Civ.

4944, 2012 U.S. Dist. LEXIS 81447, at *48 (S.D.N.Y. Apr. 30, 2012) (id. at 13 & n.48).

Plaintiff also failed to establish a basis to impute the harassment to the employer (id. at 16-18).

Finally, defendant points out that plaintiff did not raise an harassment allegation regarding

Matusek, Grochocki, Marzullo, and McKinney before the EEOC or in this Complaint (id. at 18).

As for plaintiff's claimed disabilities, defendant argues that plaintiff is in fact not disabled

due to her anxiety since she could perform her work if she received time off under the Family

and Medical Leave Act and she did not suffer anxiety attacks at other employers or while

unemployed (id. at 18-20).

Finally, defendant concludes that plaintiff has not suffered any damages for lost wages or

emotional distress (id. at 20-21).

Plaintiff responds that there are disputed material issues of fact (Docket No. 36, Pl.

Memo. at 1).  She states that she had to prove whether her gender or disability were a motivating

factor behind the adverse employment actions she suffered and that the reason she did not receive

training and was later fired because she was not a man; defendant's justification for not training

her was not supported by the facts; she was terminated because of her disability; and defendant's

justification for her termination was pretext (id. at 4).  Plaintiff contends that the denial of

training was an adverse employment action since the training would have facilitated promotions

(id. at 5-6).  Plaintiff asserts an inference of discrimination for gender bias since she was denied

training while male employees were not (id. at 7).  She claims that she is similarly situated to

Sherbeck (id. at 9), noting that Sherbeck had an associate's degree and was studying for a

bachelor's degree in engineering while working at defendant (Docket No. 34, Pl. Decl. ¶¶ 34-37).

She points to Marzullo's statement to her that plaintiff would not go anywhere and stay answering phones at defendant (id. ¶ 130).  These, and other inferences, plaintiff concludes establish discrimination (Docket No. 36, Pl. Memo. at 11).  Plaintiff argues that defendant's rationale for not allowing her to train was not true and contrary (id. at 11-12).

In reply, defendant argues that plaintiff admits that her primary job duties were clerical and not drafting, hence her claim of deprived training in drafting was not an adverse employment action (Docket No. 37, Def. Reply Memo. at 1-2).  Defendant denies that plaintiff was similarly situated with Rob Sherbeck or Greg Zimpfer (another employee cited by defendant but not by plaintiff) to infer gender discrimination (id. at 2-4).  Defendant also contends that plaintiff has not produce evidence to refute defendant's non-discriminatory reasons for denying plaintiff the sought training (id. at 4) or for her termination (id. at 5-7).  Defendant disputes whether plaintiff was "disabled" under the ADA for claimed anxiety, migraines and panic attacks since those conditions do not constitute a physical or mental impairment under that act and, since plaintiff obtained sufficient leave when she suffered from any of those conditions, she was not substantially limited in a claimed life activity (here, working) (id. at 7).  Defendant claims that plaintiff is raising a claim for post-traumatic stress disorder for the first time in response to this motion (id. at 8 & n.30).  Plaintiff also never raised an accommodation claim prior to this motion and defendant concludes that she should not be allowed to assert it anew here (id. at 8-9).

**DISCUSSION**

I.      Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2). The

movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent

submits an opposing statement of material facts as to which it is contended that there exists a

genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement

will be deemed admitted unless specifically controverted by a correspondingly numbered

paragraph in the opponent's statement, id.  Each statement of material fact is to contain citations

to admissible evidence to support the factual statements and all cited authority is to be separately

submitted as an appendix to that statement, id. R. 56(a)(3).

II.     Title VII Standard

        Under McDonnell Douglas v. Green, supra, 411 U.S. 792, and its progeny, for plaintiff's

Title VII sex discrimination claims, she first bears the burden of establishing a prima facie case

of discrimination (that is, that she suffered an adverse employment action at the hands of

defendant); once that burden is met, the burdens shifts to defendant to articulate a legitimate,

non-discriminatory reason for the alleged conduct; and once that burden is met, plaintiff has the

burden to show that the reason stated is pretextual, 411 U.S. at 802-04 (Docket No. 30, Def.

Memo. at 3-4).  A similar standard also applies to claims under the Americans with Disabilities

Act, Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006), where plaintiff has the

burden of showing the prima facie case that she is disabled, that the employer covered by that

Act had notice of her disability, that with reasonable accommodations plaintiff could perform the

essential functions of the job, and the defendant employer refused to make such

accommodations, id.; Rodal v. Anesthesia Group of Onondaga, P.C. , 369 F. 3d 113, 118 (2d Cir.

2004), and the New York State Human Rights Law, Graves, supra, 457 F.3d at 184 n.3 (Docket

No. 30, Def. Memo. at 4 & n.11).

III.    Americans With Disabilities Act Standard

The Americans With Disabilities Act prohibits discrimination against a qualified

individual because of that person's disability, 42 U.S.C. § 12112(a) (see Docket No. 36, Pl.

Memo. at 13-14).  To establish a prima facie case under the Act, a plaintiff must show "by a

preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled

within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions

of his job, with or without reasonable accommodation; and (4) he suffered adverse employment

action because of his disability," McMillan v. City of N.Y., 711 F.3d 120, 125 (2d Cir. 2013) (id.

at 14).  To establish the disability element under the ADA, a plaintiff must prove that plaintiff

suffered from a physical or mental impairment that substantially limits one or more major life

activities, Bragdon v. Abbott, 524 U.S. 624, 632-40 (1998) (Docket No. 30, Def. Memo. at 18-19

& n.68).

IV.    Application

A.    Sex Discrimination

Plaintiff asserts sex discrimination in being deprived training and in her termination from

defendant.  As for each, plaintiff has not suffered an adverse employment action.

As in Ward v. Empire Vision Centers, Inc., 686 F. Supp. 2d 243, 249-50 (W.D.N.Y.

2010) (Larimer, J.), the denial of training to plaintiff here does not rise to an adverse employment

action.  In Ward, this Court found that "[r]egardless of whether the training was deferred or

denied, it is undisputed that the training [plaintiff] sought had no impact whatsoever on the terms

and conditions of her employment, was not related to the requirements of her position, would not

have increased her salary or benefits, was not routinely offered to employees in her position,

13

would not have altered her duties, and was not a prerequisite for other, advanced positions at

[defendant]. As such, [the defendant's] determination not to immediately grant [plaintiff's]

request for the training had no impact upon her employment, and could not have constituted an

adverse employment action." Id. Plaintiff in this case has not shown that the training she sought

was a prerequisite either for her current job duties or was required for advancement at some other

position at defendant; rather, she claims that she sought this training "to advance and challenge"

herself at defendant (cf. Docket No. 34, Pl. Decl. ¶ 45; see also Docket No. 36, Pl. Memo. at 5-6)

with no indication that this training was required for a particular position.

As for the inference of discrimination from the treatment of the two male employees as

compared with plaintiff, plaintiff's duties differ from the two employees, with Sherbeck as a

service technician with an associate's degree studying to receive a bachelor's degree in

engineering (Docket No. 30, Def. Statement ¶¶ 26, 27; Docket No. 37, Marzullo Reply Decl.

¶ 3). Thus, plaintiff fails to establish an inference of discrimination.

As for her termination, the issue here is whether defendant's stated reason for her

termination, the down turn in the economy, was pretextual. Plaintiff was not let go because the

tasks she performed were no longer necessary. The human resources director of defendant states

that defendant had two reductions in force and one furlough affecting almost a quarter of its

workforce when plaintiff was let go (Docket No. 37, Reply Decl. of McKinney ¶ 2).

B.      Disability Discrimination

Defendant next argues that plaintiff is not "disabled" under the Americans With

Disabilities Act (Docket No. 30, Def. Memo. at 18-20). Plaintiff to state a claim here needed to

establish that she suffered from a physical or mental impairment, that this impairment affected a

major life activity, and that the disability "substantially limits" the major life activity (id. at 19),

Bragdon v. Abbott, 524 U.S. 624, 632-40 (1998).  Plaintiff claims that she suffered migraines,

anxiety, and panic attacks which she argues were physical or mental impairments (Docket

No. 36, Pl. Memo. at 15), testifying that so long as she received Family and Medical Leave Act

leave she could perform her job (Docket No. 30, Def. Memo. at 18-20; Docket No. 30, Def. Atty.

Decl., Ex. L, Koss Tr. at 116).  The issue, therefore, is whether plaintiff is disabled.

Plaintiff is similar to the employee in Giallanza who complained that his employer did

not accommodate his anxiety.  There, Judge Telesca found that this plaintiff's work was difficult,

but not impossible, due to his anxiety and this was not enough to state an ADA claim, 2009 U.S.

Dist. LEXIS 27086, at *24 (Docket No. 30, Def. Memo. at 20).  The mere diagnosis of a

condition is not sufficient to establish a disability, id. at *20, 22 n.8 (courts to look to "the effect

of [an] impairment on the life of the individual," quoting 29 C.F.R. pt. 1630, App. § 1620.2(j)).

Here, plaintiff in effect received reasonable accommodations for her anxiety, panic

attacks, and migraines by received medical leave when she sought it (see Docket No. 36, Pl.

Memo. at 18).  Thus, her alleged disabilities did not substantially limit a life activity

(employment) to state an ADA claim.

C.      In Summary

Plaintiff has not established that she suffered an adverse employment action in not

receiving sought for training or for her termination due either to her gender or her disabilities.

Plaintiff's Title VII (and parallel New York State Human Rights Law) claims should be

**dismissed** and her ADA (and parallel New York State Human Rights law) claims also should be

15

**dismissed**; defendant's motion (Docket No. 30) for summary judgment should be **granted** and this action dismissed.

## CONCLUSION

Based upon the above, it is recommended that defendant's motion for summary judgment (Docket No. 30) be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      January 15, 2014