UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBRA KOSS,

                                    Plaintiff,

                                                                    DECISION AND ORDER
                    v.                                                       12-CV-486

STRIPPIT, INC.,

                                    Defendant.
_____


        Debra Koss was employed as a Service Communication Coordinator at Strippit,

Inc. ("Strippit"), a machine tool manufacturer.  After her employment was terminated,

Koss sued Strippit, alleging gender- and disability-based discrimination in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights

Law ("NYSHRL"), and the Americans with Disabilities Act ("ADA").  Pending before this

Court is Strippit's motion for summary judgment.

        For the reasons that follow, this Court agrees with the disposition that Magistrate

Judge Hugh B. Scott recommended in his Report and Recommendation dated January

15, 2014 (Docket Item 38).  Accordingly, the defendant's motion for summary judgment

(Docket Item 30) is GRANTED.


## BACKGROUND

        Koss began this action on May 23, 2012.  *See* Docket Item 1.  In her complaint,

Koss alleged that Strippit discriminated against her because of her gender and her

disability—an anxiety disorder— "by subjecting [her] to disparate treatment . . . , which

included discriminatory terms and conditions of employment and the termination of her

employment," as well as by harassing her.  Docket Item 1 at ¶¶ 1, 19, 25, 29, 33.  Koss

seeks compensation, punitive damages, reinstatement, and a permanent injunction

"ordering Defendant to cease and desist from engaging in the [alleged] illegal and

unlawful acts."  *Id.* at WHEREFORE cl.

Hon. Richard J. Arcara, to whom this case was then assigned, referred this

action to Judge Scott for all pretrial matters pursuant to 28 U.S.C. § 636(b)(1).  *See*

Docket Item 7.  After discovery was completed, on September 13, 2013, Strippit moved

for summary judgment.  *See* Docket Item 30.  Strippit argued, *inter alia,* that Koss had

been terminated as part of a nondiscriminatory, legitimate reduction in force and that

Koss could not demonstrate that this proffered reason was pretextual.  *See* Docket Item

30-11 (Memorandum of Law).  On November 6, 2013, the plaintiff submitted papers

opposing the motion.  *See* Docket Items 34, 35, & 36, with attachments.  The defendant

filed reply papers on November 26, 2013.  *See* Docket Item 37, with attachments.

On January 15, 2014, Judge Scott issued a Report and Recommendation

recommending that the defendant's motion for summary judgment (Docket Item 30) be

granted.  Docket Item 38.  On January 29, 2014, the plaintiff filed objections, *see* Docket

Item 39, and on February 12, 2014, the defendant responded.  *See* Docket Item 40.

This matter then was transferred from Judge Arcara to the undersigned on March 7,

2016.  And on March 29, 2016, this Court heard oral argument regarding the plaintiff's

objections to the Report and Recommendation.

## FACTS

The relevant background facts are set forth in detail in Judge Scott's Report and Recommendation, *see* Docket Item 38 at 2-10,[1] and will be repeated below only as necessary.

## DISCUSSION

### I.   Review of the Report and Recommendation

This Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).

### II.   Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact."  *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 285-86 (2d Cir. 2002)).  The party seeking summary judgment has the burden of showing that there is no genuine issue of material fact.  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).  A genuine issue is raised when "the evidence is such

---

[1] On a motion for summary judgment, the court "must view the evidence in the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465-66 (2d Cir. 2001).  The "Background" section of the Report and Recommendation relied on the defendant's statement of undisputed facts only when not contradicted by the plaintiff, and it carefully noted when the parties disagreed about certain facts.  *See* Docket Item 38 at 2-10.  The plaintiff makes no specific objections to the recitation of facts in the Report and Recommendation, arguing instead that the "Magistrate Judge . . . ignored in his application of the law to the facts many of the disputes Plaintiff raised that the Magistrate Judge even acknowledged earlier in his R & R."  Docket Item 39 at 3.

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor." *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990). But a party opposing a properly supported motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks, emphasis, and citation omitted). And "[c]onclusory allegations will not suffice to create a genuine issue." *Delaware & Hudson Ry. Co.*, 902 F.2d at 178.

## III.   *McDonnell Douglas* **Burden Shifting**

In this case, it is undisputed that the plaintiff's claims should be analyzed under the familiar burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[2]   *See* Docket Item 39 at 3-4, 16. Under that framework, the plaintiff has the burden of first establishing a prima facie case of discrimination. *See*

---

[2] This framework may be used, at the summary judgment stage, to analyze the plaintiff's gender-based discrimination claims as well as her disability-based claims. *See, e.g., Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) ("Title VII . . . and NYSHRL discrimination claims are governed at the summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas*"); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) ("ADA employment discrimination claims are subject to the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas*"); *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the New York State Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims.").

*McDonnell Douglas*, 411 U.S. at 802.  If she meets her burden, the defendant is presumed to have unlawfully discriminated against her, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981).  And if the defendant makes that showing, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual.  *Id.* at 253.

## A.    The Plaintiff's Prima Facie Case

To establish a prima facie case of gender discrimination under Title VII and the NYSHRL, the plaintiff must show that:  (1) she is a woman; (2) she was qualified for her position; (3) she was discharged or suffered an adverse employment action; and (4) her firing or adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Shumway v. UPS, Inc.*, 118 F.3d 60, 63 (2d Cir. 1997); *see Mastrolillo v. Connecticut*, 352 F. App'x 472, 473 (2d Cir. 2009).

Similarly, for her disability-based claims, the plaintiff must establish that:  "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability."  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  "Under the last element, a plaintiff must show that the adverse employment action 'took place under circumstances giving rise to an inference of discrimination.'"  *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000)).

1.    Adverse Action

Koss alleges two adverse employment actions:  the denial of her request for training and the termination of her employment.  And she asserts that Judge Scott "erred in finding no adverse employment action with respect to [her] gender and disability discrimination claims."  Docket Item 39 at 4.  According to Koss, "[w]hile the denial of training is a closer call, the Magistrate Judge was just wrong in finding that Plaintiff's firing was not an adverse action."  *Id.*

In arguing that Judge Scott found that the termination of her employment was not an adverse employment action, Koss reads too much into two sentences on page 13 of the Report and Recommendation.  *See* Docket Item 38 at 13 ("Plaintiff asserts sex discrimination in being deprived training and in her termination from defendant.  As for each, plaintiff has not suffered an adverse employment action.").  Although Judge Scott said that the plaintiff did not suffer an adverse employment action in so many words, he later noted that "[a]s for her termination, the issue is whether defendant's stated reason . . . was pretextual."  *Id.* at 14.  Because Judge Scott found it necessary to reach the third step of the *McDonnell Douglas* framework with respect to the termination of Koss's employment, he must have found that Koss's termination was an adverse employment action.  In any event, this Court agrees with the plaintiff that the termination constituted an adverse employment action.  *See Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995) ("Adverse employment actions include discharge . . .").

On the other hand, this Court agrees with Judge Scott's conclusion that the denial of Koss's request for training did not constitute an adverse employment action.  In this regard, Koss argues that the "denial of professional training . . . may constitute an

6

adverse employment action . . . where an employee can show . . . a *loss of career advancement opportunities*," Docket Item 39 at 4 (quoting *Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) (emphasis added by Koss)), and that "[i]mmediate harm need not be shown," *id.* (citing *Little v. NBC*, 210 F. Supp. 2d 330, 382, 384 (S.D.N.Y. 2002)).  Although Koss's citations and statement of the law may be accurate, she fails to show how that law applies here.

In August 2008, Koss asked for Strippit's permission and assistance to take a four-month solid-modeling course that she asserts would have helped her advance in her employment.  *See* Docket Items 34 at ¶ 50 & 36-1 at ¶¶ 26-28.  Strippit denied the request.  Docket Item 34 at ¶ 51.  Koss argues that as a result, "any forthcoming promotional opportunities in the drafting department that Plaintiff would have sought would have been unavailable to her because Defendant refused to train her."  Docket Item 39 at 4-5.

But there is no evidence in the record to support that.  On the contrary, Strippit's Director of Engineering/Service emailed Koss:

> The problem I have is drafting/designing is not part of your job description. It's difficult to justify you taking the class during normal work hours.  The class runs for approximately 4-months this is a significant amount of time to disrupt the business.

> I'm not closing the door on other opportunities for you in the company. We know your skills and capability and your desire for a position in engineering.  I've told John McKinney [Strippit's Human Resources Director] that in the future if we have a requirement for drafting/designer help that you be considered.

Docket Item 30-10 at 3.

Koss quibbles about her "job description,"[3] but it is undisputed that (1) her then-current employment did not change in any way as a result of the denial of training, (2) no positions requiring the training were available at that time, and (3) Strippit nevertheless was amenable to considering her for the position to which she aspired without the training.  There is no evidence that the denial of her request for training cost her any career advancement opportunity, and it therefore was not an adverse employment action.  *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640-42 (2d Cir. 2000); *Ward v. Empire Vision Centers, Inc.,* 686 F. Supp. 2d 243, 249-50 (W.D.N.Y. 2010) (granting summary judgment when court found denial of training was not adverse employment action because training had no impact on employment terms, was unrelated to job requirements, and was not required for other advanced positions), *aff'd* 421 F. App'x 127 (2d Cir. 2011).

## 2.    Inference of Discrimination

The termination of Koss's employment was an adverse employment action.  But to make out a prima facie case, the plaintiff also must show that the action took place under circumstances that give rise to an inference of discrimination.  And there is nothing about the circumstances here that even suggests discrimination.

---

[3] According to Koss, she had no formal job description.  And in response to the defendant's description of her job, she claims that she was "not just a clerical worker," spent "two hours of every work day performing drafting functions," and performed a variety of  "manager level" tasks.  Docket Item 36-1 at ¶ 2.  Assuming the facts alleged by the plaintiff to be true, it still is undisputed that most of the plaintiff's workday was spent on tasks *other than drafting or engineering.*  It also is undisputed that the plaintiff was assigned "overflow" drafting work, not involving solid modeling, only when it did not interfere with her principal responsibilities.  *Compare* Docket Item 30-12 at ¶¶ 12-13 *with* Docket Item 36-1 at ¶ 13.

It is undisputed that Koss was terminated on December 4, 2008, as part of a larger reduction in force affecting six employees. Docket Item 30-12 at ¶ 59.[4]  The five other employees who were terminated all were male.  *Id.*  And prior to Koss's termination, Strippit had taken a number of actions favorable to Koss, including granting her request to transition from part time to full time, *id.* at ¶ 16, and finding her drafting work to do as long as it did not interfere with her other duties, *id.* at ¶ 13.

None of that gives rise to an inference of discrimination.  Koss relies on vague and conclusory allegations of gender bias in an attempt to create that inference, but those allegations fail to accomplish their purpose because they are entirely unconnected to Koss's termination.  For example, she asserts that Strippit had "a history of a male dominated work force."  Docket Item 39 at 11.  But whatever that means, it has nothing to do with the termination of Koss's employment and is insufficient to give rise to an inference of discrimination.  *See Pearson v. Lynch,* No. 10 CIV. 5119 RJS, 2012 WL 983546 (S.D.N.Y. Mar. 22, 2012) (no inference of discrimination where terminated plaintiff was only male administrative assistant); *Anderson v. Hertz Corp.,* 507 F.Supp.2d 320, 329 (S.D.N.Y.2007) ("The fact that Plaintiff was the only African-American Station Manager" did not "supply evidence sufficient for Plaintiff to establish a prima facie case of discrimination.").

Koss also claims that some Strippit employees made "[c]omments indicating gender bias," *see* Docket Item 39 at 10, but the alleged comments were not made by employees who had decision-making authority with respect to Koss's employment.  *Cf.*

---

[4] The Court has compared this and other facts set forth in the defendant's statement of undisputed facts with the plaintiff's submissions.

*Beshty v. Gen. Motors*, 327 F. Supp. 2d 208, 213 (W.D.N.Y. 2004), *aff'd*, 144 F. App'x

196 (2d Cir. 2005) (degrading remark made by employee with no involvement in

plaintiff's termination, months before the termination occurred, does not show

discriminatory purpose in plaintiff's termination).  Koss observes that two company

directors testified that they did not know of any woman who had been promoted at

Strippit, and she alleges that one stated that she would "always be answering phones."

Docket Item 39 at 11.  But even taken as true, those facts still do not sustain an

inference that Koss's employment was terminated because of gender-based animus,

especially when five men were discharged at the same time.  And with respect to her

disability, Koss offers much less, since there is no evidence that Strippit had any issue

with accommodating her disability or permitting her to take sick leave.  *See* Docket Item

30-12 at ¶¶ 57-58.

   Koss attempts to establish an inference of discrimination with respect to the

denial of training by comparing herself to a male colleague, Robert Sherbeck, to whom

Strippit offered additional training at about the same time that it rejected her request.

Because the denial of training was not an adverse action, *see* above, this Court need

not reach that issue.  But even if the denial of training were an adverse action, the

comparison with Sherbeck would not support an inference of discrimination.

   To establish such an inference on her Title VII claim, Koss must show that "she

was treated less favorably than comparable male employees in circumstances from

which a gender-based motive could be inferred." *Montana v. First Fed. Sav. & Loan

Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989).  Whether two employees are

similarly situated ordinarily presents a question of fact for the jury, *Graham v. Long*

*Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000), but "a comparator must be similarly situated in all material respects," *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 54 (2d Cir. 2014).  Here, Judge Scott concluded that Koss and Sherbeck were not sufficiently similar to establish an inference of discrimination, and this Court agrees.  Sherbeck's education and background in computer programming, which was "very attractive" to Strippit, distinguished him from Koss in a material and significant way.  *See* Docket Item 37-3 at ¶ 3.  According to Strippit, "it would have been very difficult to recruit someone . . . [with Sherbeck's] computer programming skills . . . . [W]e believed that he had the capacity to make a significant contribution to our engineering team by designing . . . software . . . ." *Id.*  In contrast, Koss had no such education or background and sought training in a new field, which had "become increasingly integrated into the tasks performed directly by Strippit's engineers." *Id.*

Thus, Koss has not established a prima facie case of discrimination with respect to the termination of her employment.  And even if the denial of training had been an adverse employment action, Koss failed to establish a prima facie case on that claim as well.

### 3.    Disability

Judge Scott also determined that Koss did not establish a prima facie case of disability-based discrimination because she failed to show that she was disabled within the meaning of the ADA.  *See* Docket Item 38 at 14-15.

For purposes of the ADA and NYSHRL, a "disability" is "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g)(1)(i).  "'Substantially limits' is not meant to be a

11

demanding standard," and is judged in comparison "to most people in the general population." *Id.* at § 1630.2(j)(1)(i)-(ii).  This comparison "usually will not require scientific, medical, or statistical analysis." *Id.* at § 1630.2(j)(1)(v).  "Major life activities" include, but are not limited to, "performing manual tasks . . . concentrating, thinking, communicating, . . . and working." *Id.* at § 1630.2(i)(1)(i).

Judge Scott partly relied on the fact that Koss "received medical leave when she sought it." Docket Item 38 at 15.  Koss objected to Judge Scott's conclusion, arguing, *inter alia*, that "accommodation alone is not sufficient to show there is no disability . . . ." *See* Docket Item 39 at 22.  But this Court need not decide whether Koss was disabled, both because she has failed to establish a prima facia case as explained above, and because she failed to raise a genuine issue of fact about whether Strippit's nondiscriminatory reason for the termination of Koss's employment was pretextual as explained below. *E.g. Rodriguez v. City of New York*, 484 F. App'x 637, 638 (2d Cir. 2012) (affirming summary judgment when defendant offered legitimate, nondiscriminatory reason for terminating plaintiff, and plaintiff failed to present sufficient evidence from which jury could find the stated reason was pretextual).

### B.    Strippit's Reason for Termination

Because Koss did not establish a prima facie case, Strippit is entitled to summary judgment.  But even if this Court is mistaken in reaching that conclusion, Strippit still would be entitled to summary judgment because it had a legitimate, nondiscriminatory reason to terminate the plaintiff's employment and Koss cannot show pretext.

Assuming that the burden shifted to Strippit to show a legitimate, nondiscriminatory reason for the termination of Koss's employment, it easily met that

burden.  As previously noted, Strippit proffered evidence that the termination of Koss's

employment was simply part of a much larger reduction in its workforce.  In support of

that reason for terminating Koss's employment, Strippit offered the declarations of

company officers who affirmed under penalty of perjury that at the time Strippit

discharged Koss, a reduction in its workforce was an economic necessity.  Docket Items

30-7 at ¶ 6 & 37-3 at ¶ 5.  Indeed, Strippit proffered evidence that between 2008 and

2009, it had two reductions in its workforce and one furlough affecting 21 employees, or

approximately 23% of its non-unionized workforce.  Docket Item 37-4 at ¶ 2.  Judge

Scott correctly found that proffer sufficient to rebut a presumption of discrimination.

Strippit's across-the-board reduction of its workforce was a legitimate,

nondiscriminatory reason why the plaintiff's employment was terminated.  *See Gallo*, 22

F.3d at 1226 (affidavits of officers who declared business downturn required a reduction

in force was sufficient to shift burden back to plaintiff).  Indeed, the fact that most—if not

all—employees whose jobs were terminated were men, along with the fact that nearly a

quarter of Strippit's non-union workers were furloughed in one of two reductions,

suggests that Koss was simply one of many employees —male and female—treated in

the same way at about the same time.  Consequently, the burden shifted back to Koss

to show that the proffered reason was pretextual and that the real reason for terminating

her employment was discriminatory.  *See Burdine*, 450 U.S. at 253.

### C.   Pretext

Judge Scott found, as a matter of law, that Koss did not meet her burden of

showing that Strippit's proffered reasons were pretextual.  *See* Docket 38.  Koss's

objections to Judge Scott's Report and Recommendation on this issue are threefold:

(1) Strippit did not actually save money by terminating Koss, (2) Strippit "never distributed [Koss's] duties among . . . managers, as it said it would," and (3) Strippit afforded male employees the opportunity to return to work, but did not afford Koss the same opportunity.  Docket 39 at 12-15.  But giving Koss's arguments the benefit of every doubt, this Court agrees with Judge Scott's determination that Koss has failed to raise a genuine issue as to any material fact showing Strippit's proffered reason for terminating Koss's employment to be pretextual.

First, even when considering the facts in the light most favorable to Koss, the assertion that Strippit did not actually save money by terminating Koss fails because it is not supported by the record.  In support of her argument, Koss observes that after her employment was terminated in December 2008, all her work was initially given to one employee, Marlene Depczynski.  Docket Item 36-1 at ¶¶ 59-60.  When Depczynski went on medical leave in early 2012, Strippit used an employment agency to replace her with a temporary employee.  *Id.*; Docket Item 35-1 at 20-21, 23.  And when Depczynski returned to full-time work, the temporary employee was retained by Strippit to perform Koss's former duties.  *Id.*  According to Koss, all that was outside normal procedure for the company, and all that shows that Depczynski could not have assumed all of Koss's duties in addition to her own.

But even if all that is true, those facts would not suggest that Strippit failed to save money by terminating Koss in the reduction-in-force.  Hiring a temporary employee—who worked only 20-24 hours per week—four years after Koss's departure does not demonstrate that Strippit did not save money by terminating Koss's employment.  Moreover, there was a four-year lapse between the termination of Koss's

employment and the hiring of the temporary employee; the temp's hiring is therefore too far removed from the termination to sustain the inference that "no money is saved when a temporary worker is brought in to do the [same] work." Docket Item 39 at 1. Furthermore, Koss offers no evidence to support the counterintuitive assertion that Strippit saved no money by transferring her duties to Depczynski—even if, four years later, it had to hire a part-time employee to do them. And the fact that the part-time worker who Koss asserts was given Koss's former duties four years later also was a woman makes her claim of discrimination all the more meritless.

What is more, even if Strippit did not actually save money by terminating Koss's employment, that would not suggest that the termination was pretextual. Sometimes, employers make decisions designed to save money that simply do not work. An employee might be fired or furloughed as a cost-saving measure, and the employer might find that it actually lost money as a result. That would make the termination a bad decision, not a discriminatory one. Here, Koss's job was terminated along with the jobs of five others, all men. At around the same time, nearly one quarter of Strippit's non-union employees lost their jobs. To suggest that all that was a pretext to get rid of Koss defies credulity.

Koss also attempts to establish pretext by noting that Strippit initially said that Koss's work duties would be absorbed by managers at the company but actually had non-managerial employees assume her work. Docket Item 36-1 at ¶¶ 59-60. Citing *McGuinness v. Lincoln Hall*, Koss argues that this inconsistency, by itself, establishes pretext. Docket Item 39 at 12 (citing 263 F.3d 49, 55 (2d Cir. 2001)). But it does not. As the *McGuinness* court itself acknowledged, "'in [some] circumstances, a prima facie

15

case, combined with falsity of the employer's explanation, will *not* be sufficient' to establish disparate treatment on the basis of an illegal criterion." *Id.* (quoting *James v. New York Racing Ass'n*, 233 F.3d 149, 155 (2d Cir. 2000) (emphasis added)).  That is the case here.  First, the alleged inconsistency is completely irrelevant:  Whether Strippit saved money—or attempted to save money—by having Koss's duties assumed by managers or by non-managerial employees has nothing to do with anything. Second, whether managers or non-managers were assigned Koss's duties does not in any way impact Strippit's rationale for terminating Koss:  that a reduction-in-force was needed to alleviate the company's economic struggles.  Stated another way, Strippit likely lowered its costs, or at least tried to lower its costs, by terminating six employees, including Koss, regardless of whether managers or non-managers took over their duties.  And if an employer changes its mind about to whom to assign certain duties, that does not in any way suggest pretext.

Finally, Koss argues pretext by pointing out that three laid-off male employees were eventually offered the opportunity to return to work while she was not given the same opportunity.  Docket Items 39 at 15 & 35 at ¶¶ 36-37, 47.  But 15 other employees—all men—who were laid off in the relevant time period also were never afforded the opportunity to return.  Docket Item 37-4 at ¶ 4.  Thus, like Judge Scott, this Court cannot infer that the offer to rehire three men raised a question of fact suggesting pretext, and neither could a reasonable juror.

In sum, Koss has failed to raise a question of material fact suggesting that Strippit's proffered legitimate, nondiscriminatory reason for terminating her employment may have been pretextual.  Judge Scott therefore correctly concluded that Strippit was

entitled to judgment as a matter of law both on Koss's gender-based and her disability-based discrimination claims.  *See McDonnell Douglas*, 411 U.S. at 804-05, 93; *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013).

## CONCLUSION

The plaintiff has failed to make a prima facie showing that the failure to provide her additional job-related education was an adverse employment action or that it circumstantially gives rise to an inference of discrimination.  Likewise, she has failed to show that the termination of her employment gives rise to an inference of discrimination. And even assuming that the burden shifted to the defendant to show a legitimate, nondiscriminatory reason for terminating the plaintiff's employment, the plaintiff cannot show that her termination was not part of a general reduction in force or was otherwise pretextual.

Because there is no genuine issue of fact material to the plaintiff's claim, this Court adopts the disposition recommended in Judge Scott's Report and Recommendation, and Strippit's motion for summary judgment (Docket Item 30) is GRANTED.

SO ORDERED.

Dated:   July 22, 2016
        Buffalo, New York


LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE